IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH STAUFFACHER,**

      **Plaintiff,**

vs.                                                          **No. CIV 04-219 LCS**

**JOANNE BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 1), filed February 26, 2004.  The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income.  This matter comes before this Court pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and should be **GRANTED**.

      **I.**      **STANDARD OF REVIEW**

      The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record.  *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, that she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience.  *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.   PROCEDURAL HISTORY

Plaintiff, now 58 years old, filed applications for disability insurance benefits (R. at 78-80) and supplemental security income (R. at 282-283) on February 1, 1999, alleging disability commencing on February 16, 1993.  (R. at 78).  Plaintiff listed past relevant work as a shift manager at McDonald's and as an assistant in managing a motel, which included doing all bookkeeping work.  (R. at 134).

Plaintiff's application for supplemental security income and disability insurance benefits was denied at the initial level on May 28, 1999 (R. at 34-36) and at the reconsideration level on June 25, 1999. (R. at 51-53). On June 9, 1999, Plaintiff retained attorney Barbara Jarvis. (R. at 15). Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge on June 28, 1999. (R. at 54). This hearing was held on January 13, 2000. (R. at 341-356).

The ALJ issued his decision on March 31, 2000 (R. at 37-42), analyzing Plaintiff's claim in accordance with the sequential evaluation set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 41). At the second step, the ALJ found that claimant had a combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (Id.) The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ also determined that Plaintiff was not fully credible regarding the extent of her limitations. (Id.) At step four, the ALJ found that claimant had the Residual Functional Capacity to perform light work and that she was therefore not precluded from performing her past relevant work. (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

Plaintiff filed a Request for Review of Hearing Decision on May 22. 2000. (R. at 57). The Appeals Council granted this request and remanded the case to the Administrative Law Judge for further proceedings on May 30, 2002. (R. at 295).

This matter again came before the ALJ for a hearing on April 2, 2003.  (R. at 306-339).  Plaintiff was represented by Ms. Jarvis.  (Id.)  Plaintiff and Dee Turner, a Vocational Expert, testified at the hearing.  (Id.)

The ALJ issued his decision on August 5, 2003 (R. at 20-27), analyzing Plaintiff's claim in accordance with the sequential evaluation set forth in 20 C.F.R. § 404.1520(a)-(f).  At step one of the sequential evaluation, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged date of onset of disability.  (R. at 26).  The ALJ further found, at step two, that Plaintiff had impairments considered 'severe' under 20 C.F.R. § 404.1520(b).  At step three however, the ALJ determined that none of these impairments met or equaled any impairment found in the Listings, Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599.  (Id.)  The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations.  (Id.)  At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform her past relevant work.  (Id.)  The ALJ then completed an alternative step five analysis, determining that Plaintiff retained the residual functional capacity to perform a wide range of light or sedentary work in accordance with 20 C.F.R. §§ 404.1567 and 416.967.  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review.  (Id.)

Plaintiff filed a Request for Review of Hearing Decision on October 9, 2003 and the Appeals Council denied this request on January 7, 2004.  (R. at 14, 8).  Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review.  On February 26, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.   ANALYSIS AND FINDINGS

Plaintiff has a long history of arm and wrist pain, apparently originating from an injury sustained in October, 1992. (R. at 170). Following this injury, Plaintiff complained of continuous pain in the left arm and wrist. (Id.) She claimed to have difficulty doing any work with the left upper extremity. (Id.) She also complained of pain in the neck and back. Plaintiff's medical history was significant for a previous carpal tunnel release on the right hand. (Id.) Dr. William Levitt diagnosed Plaintiff with joint pain secondary to trauma and treated her with steroid injections and a wrist brace/splint. (Id.)

Plaintiff was also evaluated by Dr. Richard Weber in October, 1992. (R. at 177-179). Dr. Weber felt Plaintiff was suffering from acute sprain of the left wrist, but recommended ruling out possible carpal tunnel syndrome. (Id.) However, it was recommended that a conservative course of treatment be followed as there were no definite findings of carpal tunnel syndrome and Plaintiff was advised to continue with her present activities. (R. at 179).

Plaintiff began a program of physical therapy in November, 1992. (R. at 180-195). At her initial evaluation, it was noted that Ms. Stauffacher did have some visible swelling in the left wrist as compared to the right. (R. at 193). It was felt Plaintiff might have some early signs of carpal tunnel syndrome. (R. at 194). As of January, 1993, Plaintiff continued to complain of wrist pain and cervical/dorsal pain, although she felt her back pain had improved somewhat. (R. at 182). However, Ms. Stauffacher was discharged from her physical therapy program due to a failure to comply with the treatment regimen prescribed. (R. at 181).

A neurologic consult performed in November, 1992, revealed no electrical evidence for carpal tunnel entrapment. (R. at 196). Dr. Mark Berger opined that Plaintiff's symptoms were

more likely due to a musculoskeletal condition than to any type of neuropathic process. (Id.) As of November, 1992, Dr. Levitt opined that Ms. Stauffacher was able to perform jobs that only required the use of one arm. (R. at 173).

Plaintiff continued to see Dr. Levitt well into 1994 for evaluation of wrist and neck pain. (R. at 163-170). During this time, Plaintiff was placed on Darvocet to help with pain symptoms. (R. at 169). Plaintiff complained of numbness and tingling in the scaphoid bone. She was also noted to have a positive Tinel's sign.[1] (R. at 168). In December, 1992, Plaintiff began to complain of increased pain in the right wrist as she was continuing to work full-time and was wearing a brace on the left wrist. (R. at 167). As of March, 1993, Plaintiff continued to complain of joint pain in the wrists bilaterally. (R. at 166). In May of 1993, Plaintiff complained of an acute flare-up of carpal tunnel syndrome which caused swelling in the hands with numbness in the fingertips. (R. at 164). She stated she was unable to use her left hand at this time. (Id.) In September of 1993, Dr. Levitt determined that Plaintiff was "medically unable to sit for prolonged periods." (R. at 174).

The record is virtually silent as to Ms. Stauffacher's medical care until late 1994, at which time she visited Dr. John Sloan for further evaluation of pain. (R. at 250-254). An MRI scan revealed mild loss of signal throughout the cervical spine, compatible with mild disc dessication. (R. at 252). A minimal disc bulge on C6-7 on the right side was also visible. (Id.) Cervical spine examination revealed myofascial tenderness and some spasm in the trapezius and levator scapulae. (Id.) Continued physical therapy with higher cervical and cranial manipulation was recommended

---

[1]Tinel's sign (or DTP) refers to a sensation of tingling, or of "pins and needles", felt in the distal extremity of a limb when percussion is made over the site of an injured nerve; it indicates a partial lesion or early regeneration in the nerve. STEDMAN'S MEDICAL DICTIONARY 1619 (Marjory Spraycar, ed., 1995).

to decrease Plaintiff's headaches. (Id.) Plaintiff also saw Dr. Berger in early 1995 to determine if her headaches had a neurologic etiology. (R. at 255-256). The headaches were noted to be producing no neurological impairment or disability. (Id.) The EEG performed was also normal and it was felt that the headaches were most likely due to muscle contractions. (Id.)

Plaintiff was seen by Dr. Ben Glover, a neurosurgeon, in March of 1995 for further evaluation of neck pain. Dr. Glover's impression was of cervical strain. (R. at 204). X-rays revealed a slight narrowing of the C6-C7 interspace and hypertrophy of the uncinate processes of C7, which was believed to be producing some neural foraminal impingement at that level. (R. at 205). Plaintiff again saw Dr. Glover in January of 1996, at which time it was mentioned that Plaintiff had suffered a whiplash injury during a car accident in December, 1994. (R. at 262). She was felt to have chronic cervical strain from this injury and Dr. Glover felt Ms. Stauffacher would continue to have problems for several months. Dr. Glover gave Plaintiff a whole body impairment rating of 3%. (Id.)

The record is again silent until December, 1997, at which time Plaintiff was admitted to Presbyterian Hospital in Albuquerque, NM for evaluation of chest pain. (R. at 224). At the time of admission, an EKG and chest x-ray were performed, both of which were normal. (Id.) Plaintiff also received a plastic surgery consultation, as her cardiac evaluation was negative. (R. at 220). It was felt that Plaintiff's substernal chest pressure might be due to the size of her breasts. (Id.) Dr. Jean Shimanek discussed the possibility of breast reduction surgery with Plaintiff. (R. at 221).

During her hospitalization Plaintiff also underwent a venous examination and a stress echocardiogram. (R. at 222-223). The venous examination was negative for lower extremity

7

deep venous thrombosis or superficial venous thrombosis. (R. at 222). The stress echocardiogram was also found to be normal. (R. at 223). Plaintiff's discharge summary reiterated Dr. Shimanek's recommendation of breast reduction to ease both her chest and back pain. (R. at 219). However, it was felt that the patient should first pursue weight loss. She was counseled on diet and exercise. (Id.) Views of the cervical spine again revealed mild degenerative disc disease from C5 through C7 with mild neural foraminal narrowing bilaterally. (R. at 226).

Plaintiff underwent another MRI scan in January, 1998 which revealed disc narrowing at C6-7 associated with a broad-based paracentral and lateral disc protrustion. (R. at 197). This was also felt to be consistent with a herniated disc. It was not felt that surgery was a good option for the Plaintiff at that time. (Id.)

A disability evaluation was performed on Plaintiff in May, 1999. She was found to have degenerative disc disease, with a possible herniated disc, headaches, and complaints of right arm pain. (R. at 231). There was evidence of cervical pathology and limitation of cervical range of motion. The claimant stated that she had significant, daily episodes of disabling pain. (Id). A residual functional capacity assessment performed by Dr. Melvin Golish revealed that Plaintiff had limitations in the amount of weight she could carry, but could sit and/or stand for up to six hours in an eight-hour work day. (R. at 237). Climbing and balancing were to be done only occasionally. (R. at 238). Plaintiff was found to be limited in reaching and it was recommended that she avoid concentrated exposure to hazards such as machinery or heights. (R. at 240). No visual or communicative limitations were established.

## IV.     ANALYSIS

Plaintiff alleges several errors in her Motion to Reverse and Remand.  She first argues that the ALJ did not follow the directives of the Appeals Council on Remand.  She further argues that the ALJ failed to consider all severe impairments, that the ALJ did not give proper weight to the opinions of her treating physicians and that the ALJ did not perform the requisite credibility analysis.  She further alleges that the ALJ erred in finding she retained the residual functional capacity to perform her past relevant work.  The ALJ apparently decided this case at step four, determining that Plaintiff could return to her past relevant work, although he also determined that she could perform other work in the national economy.

Plaintiff's first allegation of error is that the ALJ failed to follow the directives of the Appeals Council's May 30, 2002 remand order.  Specifically, the Appeals Council directed the ALJ to give consideration to the treating source opinions and explain the weight given to such opinion evidence, to evaluate the claimant's subjective complaints and provide rationale for evaluation of symptoms, to give further consideration to the claimant's residual functional capacity, and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.  (R. at 73).

However, this Court's jurisdiction does not extend to a determination of whether the ALJ followed the directives of the Appeals Council.  *Gallegos v. Apfel*, No. 97-2267, 1998 WL 166064, at *1 (April 10, 1998) (unpublished) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); 42 U.S.C. § 405(g).  This Court may only consider the final decision of the Commissioner.  *Id.*  As such, I do not have jurisdiction to consider Plaintiff's contentions regarding the ALJ's adherence to the Appeals Council's remand order.  *Gallegos*, 1998 WL

9

166064 at *1 ("Plaintiff's challenge to the ALJ's adherence to the Appeals Council's remand order is not cognizable by this court. By statute, our jurisdiction extends only to the Commissioner's final decision.")

### a. Analysis of the Severity of Plaintiff's Impairments

Plaintiff contends that the ALJ failed to consider all of her severe impairments at step two. Specifically, she argues that the ALJ failed to consider that her carpal tunnel syndrome was a severe impairment. She further contends that the ALJ failed to give proper weight to medical opinions. I will consider these contentions together.

The ALJ determined that Plaintiff had severe impairments of degenerative disc disease with a bulging disc of the cervical spine and headaches. (R. at 22). He did not indicate that he found Plaintiff's allegations of carpal tunnel syndrome to be a severe impairment. (R. at 22-23). The Regulations require that, if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential evaluation. *See* 20 C.F.R. §§ 404.1521 and 416.921. It is Plaintiff's burden at step two to demonstrate an impairment that significantly limits her ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). However, having determined that Plaintiff suffered from severe impairments, the ALJ was required to discuss Plaintiff's other medical complaints which had some basis in the record. 20 C.F.R. §§ 404.1521 and 416.921.

The ALJ discussed the opinions of several physicians relating to Plaintiff's wrist pain and cervical strain, as well as treatment sought for heart problems. (R. at 22-24). It is well-established in the Tenth Circuit that the ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). However, the record must

demonstrate that the ALJ considered all of the evidence. *Id.* Further, in addition to discussing the evidence supporting his decision the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects. *Id.* at 1010 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position")).

In discussing Plaintiff's complaints of wrist pain and rendering his opinion that Plaintiff could return to her past relevant work, the ALJ relied on the opinions of Dr. Weber that the Plaintiff possessed no "definite" signs of carpal tunnel syndrome (R. at 23), on Dr. Berger's analysis of EMG studies which displayed no evidence of carpal tunnel syndrome, (Id.) and on Dr. Sloan's records of treatment for left wrist and thoracic strain. (Id.) However, other medical reports existed which the ALJ chose not to discuss. Records from Plaintiff's physical therapy program in late 1992-early 1993 revealed that her therapists believed she might have some early signs of carpal tunnel syndrome. (R. at 180-195). Further, Dr. Levitt had at one point recommended limiting Plaintiff to jobs requiring the use of only one arm. (R. at 173). It is not clear from the record that the ALJ considered this evidence. Therefore, the case must be remanded for further proceedings. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings with specific evidence...A bare conclusion is beyond meaningful judicial review.")

      **b.**    **Reports by Plaintiff's Treating Physicians**

The ALJ further erred in the weight given to the opinions of Ms. Stauffacher's primary treating physicians. It is axiomatic that the ALJ must give controlling weight to the treating

physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). 20 C.F.R. § 404.1527(d)(2). The Tenth Circuit has found that factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination and the extent to which the opinion is supported by objective medical evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

The ALJ stated that "I give this specialist's [Dr. Berger] opinions more weight than Dr. Levitt's opinions, which are arguably to the contrary on the diagnosis of carpal tunnel syndrome." (R. at 23). Although Dr. Levitt's conclusions are not binding on the ALJ, his conclusions as to Plaintiff's wrist pain should have been addressed in the ALJ's opinion. An ALJ may disregard the opinion of a treating physician when he has set forth specific and legitimate reasons for discounting the opinion. *White*, 287 F.3d at 907. However, the ALJ set forth only the most cursory explanation as to why he rejected Dr. Levitt's analysis of carpal tunnel syndrome. (R. at 23). Such an evaluation is inappropriate under this Circuit's precedent regarding the opinions of treating physicians. Although an ALJ may disregard the opinion of a treating physician, he is required to set forth specific, legitimate reasons why he chooses not to rely on those opinions. *Langley*, 373 F.3d at 1119. Because the ALJ did not set for specific reasons for disregarding Dr. Levitt's analysis, I find that remand is appropriate in this case.

    **c.**     **Analysis of Plaintiff's Credibility and Residual Functional Capacity**

Plaintiff also argues that the ALJ erred in finding that her complaints regarding pain were not fully credible and in finding that she had the residual functional capacity to return to her past

relevant work. (R. at 26). With respect to Plaintiff's credibility, the Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, because I have determined that it is not clear the ALJ considered all medical evidence or that he properly considered the opinions of Plaintiff's treating physicians, I cannot determine that the ALJ's credibility determination is based on substantial evidence.

With respect to the ALJ's determination that Plaintiff has the residual functional capacity to perform her past relevant work, it is not clear to me that his findings regarding her residual functional capacity are supported by substantial evidence as required by *Diaz. Id.* A claimant's RFC must be determined by what an individual can do despite her limitations, and is based upon all the relevant evidence including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of her limitations. 20 C.F.R. §§ 416.945(a)-416.946. Because it does not appear that the ALJ considered all relevant evidence, the case must be remanded for a more thorough evaluation of this evidence.

Given the deficiencies in the ALJ's analysis at step four, this case must be reversed and remanded for further proceedings consistent with this opinion.

## V.     CONCLUSION

Upon review of the evidence presented in Plaintiff's Motion to Reverse and Remand Administrative Decision, I have determined that the Commissioner's decision was not supported

13

by substantial evidence and that the ALJ failed to adequately develop the record at step four of the sequential evaluation.  Accordingly, Plaintiff's Motion to Reverse and Remand is **GRANTED**.

    **A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**